UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER HOLMES GORDON,<br><br>Defendant. | Case No. 14-cr-00037-MEJ-1<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## INTRODUCTION

Defendant Christopher Holmes Gordon ("Defendant") is charged with driving under the influence of alcohol in violation of 36 C.F.R. § 1004.23(a)(1) and refusing to submit to a blood, breath, saliva, or urine test in violation of 36 C.F.R. § 1004.23(c)(2), both Class B Misdemeanors. The Court held a bench trial in this case on July 29 and 30, 2014. Dkt. Nos. 23, 25. The Government called three witnesses: (1) United States Park Police Officer April Ramos, who initiated the vehicle stop, conducted Field Sobriety Tests, and arrested Defendant; (2) United States Park Police Officer Michael Griffin, who arrived on the scene after Defendant stopped and conducted Field Sobriety Tests; (3) United States Park Police Officer Sean Cox, who also arrived on the scene after Defendant had stopped his vehicle; (4) Jason Kirmse, owner of the Fat Angel bar in San Francisco; (5) Keenan Francois Watts, a bartender at Yoshi's Jazz Club in San Francisco; and (6) Dr. Nikolas Lemos, a forensic toxicologist. Defendant testified on his own behalf and also called Dr. David R. Lew, a forensic toxicologist.

As to the first count, the issue for trial was whether Defendant was under the influence of alcohol to a degree that rendered him incapable of safe operation. 36 C.F.R. § 1004.23(a)(1). As to the second charge, the issue for trial was whether Defendant refused any test for the presence of alcohol. 36 C.F.R. § 1004.23(c)(2). Having heard the evidence at trial, and having evaluated the

1  substance and credibility of the witnesses, the Court renders the following Findings of Fact and
2  Conclusions of Law, pursuant to Federal Rule of Criminal Procedure 23(c).

**FINDINGS OF FACT**

1. Officer April Ramos ("Ofc. Ramos") has worked for the United States Park Police for 13 years.
2. Ofc. Ramos trained at the Federal Law Enforcement Center, where she received additional training and earned a certificate in DUI investigations from the National Highway Traffic Safety Administration. Ofc. Ramos has conducted over 400 DUI arrests and not all of her traffic stops have resulted in DUI arrests.
3. On October 24, 2013, Ofc. Ramos was on duty at the intersection of Mesa Street and Lincoln Boulevard in full uniform and in a marked police vehicle.
4. At approximately 11:50 p.m., Ofc. Ramos observed a silver colored Jeep driving on Lincoln Boulevard come to an abrupt stop at the stop sign at Lincoln Boulevard and Graham Street. The car was stopped for several seconds.
5. Dr. Lemos, an expert in forensic toxicology, testified that a prolonged stop at an intersection marked with a stop sign is behavior consistent with that of a driver who is impaired due to alcohol.
6. Ofc. Ramos began to follow the vehicle down Lincoln Boulevard, at which point she observed the vehicle speed up and turn left on Montgomery Street, travelling between 40-45 mph in a 25 mph zone with several speed bumps on a straightaway portion of Montgomery Street.
7. Ofc. Ramos was in motion and traveling after the vehicle before this left turn, but she was not able to estimate how far in back of the vehicle she was at any point on Lincoln Boulevard or Montgomery Street.
8. On Montgomery Street, Ofc. Ramos observed the vehicle move its left side tires over the double yellow center dividing lines and weave back to the right into the lane reserved for parked vehicles, before moving back to the proper lane of travel.
9. Defendant recalled travelling over the double yellow lines, but stated that the sidewalk juts

|   |     |     |
|---|-----|-----|
| 1 |     | out over the parking lane and up to the border of the driving lane, so he adjusted his vehicle to make space for sidewalk. |
| 3 | 10. | Dr. Lemos testified that speeding, weaving over double yellow lines, and weaving into the parking lane is behavior consistent with that of a driver who is impaired due to alcohol. |
| 5 | 11. | Ofc. Ramos estimated that the vehicle traveled at 40-45 mph up Montgomery Street toward Sheridan Avenue. She estimated this speed because her car went up to 40-45 mph to catch up to the vehicle. |
| 8 | 12. | The vehicle then turned right onto Sheridan Avenue, failing to stop at the stop sign. Ofc. Ramos activated her police siren and lights. |
| 10 | 13. | Ofc. Ramos recalled that there were no cars or pedestrians traveling in either direction or in the vicinity while on Montgomery Street and Sheridan Avenue. |
| 12 | 14. | Dr. Lemos testified that failure to stop at a stop sign is behavior consistent with that of a driver who is impaired due to alcohol. |
| 14 | 15. | The vehicle then stopped in the center of the lane before proceeding to the right shoulder, at approximately Sheridan Avenue and Riley Avenue. |
| 16 | 16. | Dr. Lemos testified that stopping in the center of the lane before proceeding to the right shoulder is behavior consistent with one whose driving is impaired due to alcohol. |
| 18 | 17. | The areas where Ofc. Ramos observed the vehicle driving are within an area administered by the Presidio Trust in the Northern District of California. |
| 20 | 18. | Dr. Lemos testified that an individual can be impaired at a blood alcohol level that is less than .08 percent, and that mental impairment manifests itself before physical impairment. |
| 22 | 19. | After Defendant stopped, Ofc. Ramos waited for backup to arrive before contacting the driver of the vehicle because of the vehicle's erratic driving. |
| 24 | 20. | Officer Griffin ("Ofc. Griffin") arrived first, following Ofc. Ramos' request for backup, at which point Ofc. Ramos approached the driver of the vehicle and noticed that the Defendant exhibited red and watery eyes, slurred speech, and the distinct odor of alcohol. |
| 27 | 21. | Defendant had one passenger, Melissa Trusler. |
| 28 | 22. | From the beginning of his interactions with the officers, Defendant was assertive and |

inquisitive. He asked for legal counsel and asserted his Fourth Amendment rights against searches of his car.

23. Defendant told Ofc. Ramos that he drank one beer around 7:00 or 7:30 p.m.

24. Ofc. Ramos asked Defendant to exit his vehicle to conduct Field Sobriety Tests, and noticed that he had an unsteady gait and a distinct odor of alcohol after he was outside the vehicle.

25. Dr. Lemos testified that red and watery eyes, slurred speech, the odor of alcohol, and an unsteady gait are consistent with one who is impaired due to alcohol.

26. Ofc. Ramos and Ofc. Griffin are trained in administering and certified to conduct Field Sobriety Tests by the National Highway Traffic Safety Administration.

27. Prior to conducting the exams, Defendant told Ofc. Ramos that nothing would prevent him from performing the tests, including no mental or physical impairments, that he was not sick or injured, not a diabetic, not taking insulin, and not under the care of a doctor or taking any medications or drugs.

28. Defendant did not present any evidence that he suffered from any mental or physical conditions that would affect his performance on the Field Sobriety Tests.

29. Ofc. Griffin administered the Horizontal Gaze Nystagmus test to Defendant because he more closely approximated Defendant's height and, because of Defendant's belligerent attitude, Ofc. Ramos did not want to aggravate Defendant by asking him to sit on the hood of a car or on a curb.

30. Prior to conducting the Horizontal Gaze Nystagmus test, Ofc. Griffin asked Defendant if anything would prevent him from performing the test, and Defendant stated no.

31. Ofc. Griffin then gave instructions and conducted the Horizontal Gaze Nystagmus test.

32. During the Horizontal Gaze Nystagmus test, Ofc. Griffin observed six clues indicating intoxication: lack of smooth pursuit, distinct and sustained nystagmus at maximum deviation in both the left and right eye, and the onset of nystagmus before the 45-degree angle in both the left and right eye.

33. Ofc. Ramos observed Defendant sway 3-5 inches back and forth during Ofc. Griffin's

1 administering of the Horizontal Gaze Nystagmus test.

34. Dr. Lemos testified that the presence of six out of six clues in the Horizontal Gaze Nystagmus test indicates that an individual is impaired due to alcohol.

35. Dr. Lemos testified that sexual arousal does not cause Horizontal Gaze Nystagmus.

36. Dr. Lemos testified that swaying during the Horizontal Gaze Nystagmus test is consistent with someone who is impaired due to alcohol.

37. Ofc. Ramos then had Defendant perform the Walk and Turn test and the One Leg Stand test on the sidewalk on the north side of Sheridan Ave, slightly west of Riley Avenue. The sidewalk was flat, dry, level, and had no cracks.

38. Ofc. Ramos then gave Defendant instructions and he performed the Walk and Turn test.

39. Defendant testified that he was accused of being on drugs during the Walk and Turn test, and he believed the Field Sobriety Tests were a set up and he would most likely be arrested in any event.

40. During the Walk and Turn test, Ofc. Ramos observed six out of eight clues indicating intoxication, including Defendant missing touching heel to toe on four steps, losing his balance, turning around incorrectly, and forgetting instructions to walk back.

41. Dr. Lemos testified that an inability to maintain balance and follow instructions is consistent with one who is impaired due to alcohol. He also testified that the presence of six out of eight clues in the Walk and Turn test is consistent with one who is impaired due to alcohol.

42. Ofc. Ramos then gave Defendant instructions and he performed the One Leg Stand test.

43. During the One Leg Stand test, Ofc. Ramos observed three out of four clues indicating intoxication: Defendant did not count as instructed, raised his arms 90 degrees, and lost his balance.

44. Dr. Lemos testified that not counting as instructed, not raising arms as instructed, and losing balance are all consistent with someone who is impaired due to alcohol.

45. Throughout the course of the Field Sobriety Tests, Defendant was argumentative and belligerent with the officers. Defendant also laughed inappropriately during Ofc. Ramos'

5

1  instructions.
2  46. Dr. Lemos testified that lowered inhibitions, aggression, and laughing inappropriately are
3  consistent with one who is impaired due to alcohol.
4  47. Defendant testified that he was distracted throughout the instructions of the Field Sobriety
5  Tests and by the officers' conduct, including trying to go into his car.
6  48. After observing Defendant's driving, speaking with him, and conducting a series of Field
7  Sobriety Tests, Ofc. Ramos, given her background, training, and experience, formed the
8  opinion that Defendant was under the influence of alcohol and was unable to safely operate
9  a vehicle.
10 49. Ofc. Ramos arrested Defendant and brought him to the U.S. Park Police Station at 1217
11 Ralston, Ave. in the Presidio.
12 50. Earlier that evening, Defendant purchased two $18 beers at Fat Angel Bar and Restaurant:
13 One Fresh Hop Cascade Bottle and One Fresh Hop Chinook Bottle, each consisting of 750
14 ml (~25 oz.) with 7.5 percent ABV.
15 51. After leaving Fat Angel, Defendant went to Yoshi's bar, where he purchased $45 of
16 alcoholic beverages (pre-tax), including two Bulleitt Ryes (each with at least 2 oz liquor.
17 with 45 percent ABV), one Bulleitt (at least 2 oz. liquor with 45 percent ABV), and a
18 Ginger Manhattan (at least 2 oz. liquor with 45 percent ABV).
19 52. Defendant stated that he drank alcohol at both Fat Angel Bar and Restaurant and Yoshi's
20 Bar.
21 53. There is a two-drink minimum at Yoshi's. Defendant testified that he drank the first drink
22 around 9:50 p.m. and a part of his second drink near 11:00 p.m.
23 54. It is reasonable to assume that Defendant and Ms. Trusler would have each ordered two
24 drinks each at Yoshi's, and that the beer ordered at Fat Angel's would have been
25 eliminated and a non-factor by 11:50 p.m. Accordingly, the maximum amount of alcohol
26 at the peak in this hypothetical person would be at most .08 BAC. Dr. Lemos stated this
27 would not be the actual highest, peak amount as the human body naturally eliminates
28 alcohol.

55. The Government did not ask for Dr. Lemos to account for elimination.

56. Defendant stated that he felt the effects of alcohol while driving in the Presidio.

57. Defendant stated that he performed poorly on the Field Sobriety Tests in part because he was intoxicated.

58. There was no evidence presented that Officer Ramos or any U.S. Police Park Officer attempted to force a breath or blood sample from Defendant.

59. Defendant did not want to do a preliminary alcohol screening ("PAS") test due to bad recent publicity on it. He feared false positive reading.

60. Ofc. Ramos did not distinguish clearly between a PAS and breath test.

61. Defendant believed that he would have to take a chemical test in any event regardless of whether he told them that he wanted to do one or not.

## CONCLUSIONS OF LAW

**A.     36 C.F.R. § 1004.23(a)(1)**

Title 36 of the Code of Federal Regulations, Section 1004.23(a)(1) provides that "Operating or being in actual physical control of a motor vehicle is prohibited while [u]nder the influence of alcohol . . . to a degree that renders the operator incapable of safe operation." 36 C.F.R. § 1004.23(a)(1). Based on the evidence above, the Government has established beyond a reasonable doubt that Defendant was driving while under the influence of alcohol to a degree that rendered operation of the vehicle unsafe.

Ofc. Ramos testified credibly that she observed Defendant's silver colored Jeep driving on Lincoln Boulevard come to an abrupt stop at the stop sign at Lincoln Boulevard and Graham Street, then stop for several seconds. Dr. Lemos testified credibly that a prolonged stop at an intersection marked with a stop sign is behavior consistent with that of a driver who is impaired due to alcohol. While following the vehicle, Ofc. Ramos testified credibly that she observed the vehicle speed up and travel above the speed limit in an area of Montgomery Street with several speed bumps. She also observed the vehicle move its left side tires over the double yellow center dividing lines and weave back to the right into the lane reserved for parked vehicles, before moving back to the proper lane of travel. Although Defendant admitted that he travelled over the

7

1  double yellow lines, he stated that the cross walk juts out over the parking lane and up to the
2  border of the driving lane.  However, Dr. Lemos testified credibly that speeding, weaving over
3  double yellow lines, and weaving into the parking lane is behavior consistent with that of a driver
4  who is impaired due to alcohol.  Ofc. Ramos also testified credibly that the vehicle turned right
5  onto Sheridan Avenue and failed to stop at the stop sign.  Dr. Lemos testified credibly that failure
6  to stop at a stop sign is behavior consistent with that of a driver who is impaired due to alcohol.
7  When Ofc. Ramos activated her lights, the vehicle then stopped in the center of the lane before
8  proceeding to the right shoulder.  Dr. Lemos testified credibly that stopping in the center of the
9  lane before proceeding to the right shoulder is behavior consistent with one whose driving is
10 impaired due to alcohol.

11      Ofc. Ramos testified credibly that when she approached the vehicle, Defendant exhibited
12 red and watery eyes, slurred speech, and the distinct odor of alcohol.  She also testified credibly
13 that Defendant had an unsteady gait when asked to exit his vehicle to perform Field Sobriety
14 Tests.  Dr. Lemos testified credibly that red and watery eyes, slurred speech, the odor of alcohol,
15 and an unsteady gait are consistent with one who is impaired due to alcohol.

16      Ofc. Griffin testified credibly that he observed six clues indicating intoxication during his
17 administration of the Horizontal Gaze Nystagmus test: lack of smooth pursuit, distinct and
18 sustained nystagmus at maximum deviation in both the left and right eye, and the onset of
19 nystagmus before the 45-degree angle in both the left and right eye.  Ofc. Ramos testified credibly
20 that she observed Defendant sway 3-5 inches back and forth during Ofc. Griffin's administering of
21 the test.  Dr. Lemos testified credibly that the presence of six out of six clues in the Horizontal
22 Gaze Nystagmus test indicates that an individual is impaired due to alcohol, and that swaying
23 during the Horizontal Gaze Nystagmus test is consistent with someone who is impaired due to
24 alcohol.  Although Defendant testified that Trusler became sexually physical with him while he
25 was driving, Dr. Lemos credibly testified that sexual arousal does not cause Horizontal Gaze
26 Nystagmus.

27      During the Walk and Turn test, Ofc. Ramos testified credibly that she observed six out of
28 eight clues indicating intoxication, including Defendant missing touching heel to toe on four steps,

losing his balance, turning around incorrectly, and forgetting instructions to walk back. Dr. Lemos testified credibly that the presence of six out of eight clues in the Walk and Turn test is consistent with one who is impaired due to alcohol, and that an inability to maintain balance and follow instructions is consistent with one who is impaired due to alcohol.

Ofc. Ramos testified credibly that during the One Leg Stand test, she observed three out of four clues indicating intoxication: Defendant did not count as instructed, raised his arms 90 degrees, and lost his balance. Dr. Lemos testified credibly that not counting as instructed, not raising arms as instructed, and losing balance are all consistent with someone who is impaired due to alcohol.

Throughout the course of the Field Sobriety Tests, Defendant was argumentative and belligerent with the officers. He also laughed inappropriately during Ofc. Ramos' instructions. Although Defendant testified that he was merely being assertive and inquisitive, including asking for legal counsel, Dr. Lemos testified credibly that lowered inhibitions, aggression, and laughing inappropriately are consistent with one who is impaired due to alcohol.

It is undisputed that Defendant purchased two beers at Fat Angel Bar and Restaurant for him and Trusler, each consisting of 750 ml (~25 oz.) with 7.5 percent ABV. After leaving Fat Angel, Defendant went to Yoshi's bar, where he purchased two Bulleitt Ryes (each with at least 2 oz liquor. with 45 percent ABV), one Bulleitt (at least 2 oz. liquor with 45 percent ABV), and a Ginger Manhattan (at least 2 oz. liquor with 45 percent ABV). Defendant testified that he drank alcohol at both Fat Angel Bar and Restaurant and Yoshi's Bar, but he disputes the amount he drank. Regardless, Defendant stated that he felt the effects of alcohol while driving in the Presidio and stated that he performed poorly on the Field Sobriety Tests in part because he was intoxicated. Further, Dr. Lemos testified credibly that an individual can be impaired at a blood alcohol level that is less than .08 percent. Given the credible testimony above, the Court finds that the Government has established beyond a reasonable doubt that Defendant was driving while under the influence of alcohol to a degree that rendered operation of the vehicle unsafe.

**B.     36 C.F.R. § 1004.23(a)(2)**

Title 36 of the Code of Federal Regulations, Section 1004.23(c)(2) provides that "Any test

or tests for the presence of alcohol and drugs shall be determined by and administered at the direction of an authorized person." 36 C.F.R. § 1004.23(c)(2). The Government maintains that Defendant refused to take a blood or breath test. However, Defendant testified that he believed that he would have to take a chemical test regardless of whether he told the officers that he wanted to do one or not, and that Ofc. Ramos did not distinguish clearly between a PAS and breath test. Further, there is no evidence presented that Officer Ramos or any U.S. Police Park Officer attempted to force a breath or blood sample from Defendant. Based on the facts before it, the Court finds that the Government has not established beyond a reasonable doubt that Defendant refused to submit to a chemical test.

## CONCLUSION

Based on the above findings, the Court concludes that the Government has met its burden of proving beyond a reasonable doubt that Defendant operated or was in actual physical control of a motor vehicle while under the influence of alcohol to a degree that rendered operation of the vehicle unsafe on land administered by the Presidio Trust in San Francisco, California, in violation of 36 C.F.R. § 1004.23(a)(1). However, the Court concludes that the Government has not met its burden of proving beyond a reasonable doubt that Defendant refused to submit to a test in violation of 36 C.F.R. § 1004.23(c)(2). Accordingly, the Court finds Defendant GUILTY of Count One and NOT GUILTY of Count Two.[1]

Sentencing in this matter shall be set for January 8, 2015 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California. Defendant is directed to report to the U.S. Probation Office within 14 days of this Order so that work on the Pre-Sentence Report may be commenced.

**IT IS SO ORDERED.**

Dated: August 19, 2014

_____
MARIA-ELENA JAMES
United States Magistrate Judge

---

[1] As the Court has found Defendant not guilty of violation § 1004.23(c)(2), it need not address his arguments regarding the constitutionality of the statute.